**BOSTON PROFESSIONAL HOCKEY ASSOCIATION, INC., et al., Plaintiffs-Appellees Cross-Appellants,**

v.

**DALLAS CAP & EMBLEM MANUFACTURING, INC., Defendant-Appellant Cross-Appellee.**

No. 77–1280.

United States Court of Appeals, Fifth Circuit.

June 18, 1979.

William D. Harris, Charles S. Cotropia, J. Manuel Hoppenstein, Dallas, Tex., for defendant-appellant cross-appellee.

Ernest E. Figari, Jr., Dallas, Tex., Anthony L. Fletcher, New York City, for plaintiffs-appellees cross-appellants.

Before JONES, CLARK, and GEE, Circuit Judges.

GEE, Circuit Judge:

Before us once again is this important litigation concerning unauthorized manufacture and sale of embroidered cloth emblems, which were substantial duplications of artistic symbols used to designate the individual member teams of the National Hockey League (NHL).[1] After an appeal of the liability issues, we held that defendant's conduct violated the Lanham Act[2] in that it constituted trademark infringement under 15 U.S.C. § 1114[3] and false designation of origin of goods or false description by means of symbols under 15 U.S.C. § 1125.[4] We remanded the case to the

---

1. By the outset of the litigation in 1972, the NHL and twelve of its member teams had secured federal registration of their team symbols as service marks for ice hockey entertainment services.

2. 15 U.S.C. §§ 1051–1127.

3. 15 U.S.C. § 1114 provides in pertinent part:
 (1) Any person who shall, without the consent of the registrant—
 (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
 (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints,

packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which use is likely to cause confusion, or to cause mistake, or to deceive
shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

4. 15 U.S.C. § 1125 provides in pertinent part:
 (a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to

district court for a determination of damages, and this appeal is from that proceeding. The facts surrounding this controversy are set out in some detail in our earlier opinion,[5] and we shall repeat only those necessary to this appeal.

Defendant Dallas Cap & Emblem Manufacturing, Inc. (Dallas Cap) is in the business of making and selling embroidered cloth emblems. In 1968, and again in June of 1971, Dallas Cap sought authority from National Hockey League Services, Inc. (NHLS), the exclusive licensing agent of plaintiffs, to manufacture and distribute embroidered emblems representing the insignia of the various NHL teams. Although its attempts to obtain a license from NHLS were unsuccessful, defendant in 1972 began to manufacture and to sell the emblems through retail outlets without authority to do so. An action by plaintiffs NHL and thirteen of its member teams resulted in denial of all relief sought under the above-mentioned provisions of the Lanham Act, but the court granted limited injunctive relief for common-law unfair competition, prohibiting the defendant from selling the emblems without including a statement disclaiming that the emblems were authorized by the plaintiffs. This

court reversed the denial of Lanham Act relief and remanded the case.[6]

On remand the district court held a hearing to determine damages and found that Dallas Cap had usurped the right to manufacture and sell embroidered emblems depicting NHL team insignia. To determine the value of this right, the court used a letter written to NHLS by Dallas Cap and concluded that the latter offered $25,000 for a three-year exclusive license to manufacture and distribute three-inch emblems. Defendant's infringement was for four years, and the court calculated the prorated worth of the right to be $33,000. A like sum was added as damages for defendant's four-year unauthorized manufacture of emblems larger than three inches, and the total damage amount of $66,000 was doubled because of bad faith by Dallas Cap. Plaintiffs were also awarded $5,200 as defendant's profits attributable to the infringement. Thus, the plaintiffs' total recovery was $137,200; Dallas Cap appeals only the award of $132,000 as damages.

 Recovery for trademark infringement under the Lanham Act may include defendant's profits, any damages sustained by the plaintiff, and costs of the action.[7]

---

describe or represent the same, and shall cause such goods or services to enter into commerce, and any [such] person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

5. *Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

6. This court also affirmed the lower court's finding of unfair competition but held that the disclaimer ordered by the lower court would not remedy the illegal confusion. 510 F.2d at 1013.

7. 15 U.S.C. § 1117. The version applicable to this suit provided:

When a violation of any right of the registrant of a mark registered in the Patent Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to

Dallas Cap does not challenge the award of $5,200 profits in this case but argues vigorously that no damages were proved. We disagree. Plaintiffs offered evidence tending to show that defendant's unauthorized sales of the emblems diverted sales from plaintiffs and that the poor quality of defendant's reproductions harmed plaintiffs' business reputations. They did not, however, attempt to quantify these traditional elements of damages for trademark infringement. But plaintiffs did prove another element of damages. A trademark owner may recover for "all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts . . .." *Obear-Nester Glass Co. v. United Drug Co.,* 149 F.2d 671 (8th Cir.), *cert. denied,* 326 U.S. 761, 66 S.Ct. 141, 90 L.Ed. 458 (1945). We recognized, in our earlier decision in this litigation, that through extensive use these plaintiffs "acquired a property right in their marks which extends to the reproduction and sale of those marks as embroidered patches for wearing apparel." *Boston Professional Hockey Association v. Dallas Cap & Emblem Manufacturing, Inc.,* 510 F.2d at 1014. This property right is protected against infringement by the Lanham Act. *Id.* Thus, when Dallas Cap usurped the right to manufacture and sell plaintiffs' marks as embroidered emblems through retail outlets, it caused economic injury to plaintiffs' business interests. For the period defendant was infringing, plaintiffs were deprived of the economic benefits they normally would have received by licensing the use of their marks in connection with the sale of cloth patches. Simply stated, Dallas Cap misappropriated a valuable right belonging to plaintiffs and did not pay for it. The remaining question is whether the lower court properly calculated the damage caused by defendant's usurpation.

The calculation of damages below was based on a letter [8] dated June 17, 1971, in which Dallas Cap sought to obtain a license from NHLS. The trial court found that defendant offered $25,000 for a three-year exclusive license and found that the value of the usurped right to sell the emblems prorated for the four-year infringement period was $33,000. The amount of

the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

8. June 17, 1971
National Hockey League
2 Pennsylvania Plaza
New York City, New York
Attn: Mr. Don Ruck:
Dear Mr. Ruck:
I appreciated the opportunity to speak with you by telephone today and the chance to discuss the National Hockey League emblems. Outlined below is our proposal:
1. Manufacture and distribute Hockey Emblems nationally through our present Distributors, College Book Stores, Department Stores, Airports, Sporting Goods Stores, Gift Shops, and Sports Stadiums.
2. We are ready to start manufacturing and distributing the first week of July.
3. We will sell the emblems both bulk packaged and individually packaged, as per the enclosed samples.
4. All emblems sold in the Novelty Program would be 3" emblems that would be guaranteed by the American Institute of Laundering to be completely washable. At all times we would guarantee the workmanship and quality of all emblems involved in this program.

5. On the basis of a three year contract for distribution of these Hockey emblems we will guarantee payment of $15,000 for the full three years of the contract. We would pay 10% Royalty against the guarantee on all emblems sold and would pay the Royalty quarterly or whichever way is satisfactory to National Hockey League. All sales would be recorded by computer for instant examination.
6. If we were authorized to be exclusive manufacturer of all National Hockey League emblems sold for the period of three years, we would guarantee $25,000 and would pay 10% Royalty against the guarantee on all emblems sold. This would make us the sole authorized manufacturer of National Hockey League emblems and entitle us to the league's protection against any other manufacturer who might infringe on these rights.
7. As we discussed, the license would run for three years with an additional three, one-year renewable options.
If you have any questions, please do not hesitate to call on me. Looking forward to hearing from you in the very near future.
\* \* \* \* \* \*
P.S. As an indication, I called just one of our Distributors and he told me that his starting order would be between 30,000 and 50,000 if we get the license to make them.

damages the trial court found to have been suffered by plaintiffs is a question of fact and is subject to the clearly erroneous standard of review. *Neal v. United States*, 562 F.2d 338 (5th Cir. 1977). Because we hold that these calculations were based on a clearly erroneous finding of fact, the total award is also clearly erroneous and must be reduced.

■ Dallas Cap, in paragraph 6 of its letter to NHLS, sought to be named sole authorized manufacturer of NHL emblems for three years, and for this authority $25,000 was offered. But in relying on this paragraph to calculate the value of the usurped right, the court below found that Dallas Cap misappropriated an exclusive right to manufacture and sell the emblems. This is clearly erroneous. Plaintiff could not have made Dallas Cap sole authorized manufacturer of emblems because Lion Brothers Company was an authorized manufacturer of embroidered emblems depicting plaintiffs' team symbols. No exclusive license could have been granted to Dallas Cap, and although the court was correct in its finding that Dallas Cap usurped a right to manufacture and distribute the emblems, its finding that the right was an exclusive one is clearly erroneous. Therefore, the award of $33,000 based on this finding is also clearly erroneous.

The court should have based its damage award on paragraph 5 of the June 1971 letter. In that paragraph defendant offered to pay $15,000 for a three-year nonexclusive license to manufacture and sell the emblems through retail outlets. This was the right wrongfully taken by Dallas Cap, and the value it placed on that right was a proper measure of damages caused by the usurpation. Based upon a $15,000 offer for a three-year contract, Dallas Cap's four-year infringement of the right to manufacture and sell three-inch emblems damaged plaintiffs in the amount of $20,000.

■ The trial court correctly awarded additional damages for Dallas Cap's usurpation of the right to manufacture and sell larger emblems. The June 1971 letter plainly contemplated that Dallas Cap would manufacture and distribute nationally three-inch emblems; paragraph 4 unambiguously states that "[a]ll emblems sold in the Novelty Program would be 3″ emblems . . . ." The $15,000 offer in paragraph 5 was for "distribution of these Hockey emblems," and defendant concedes that the paragraph 5 offer was restricted to the three-inch emblems.[9] Therefore, defendant's usurpation of the right to manufacture and retail emblems larger than three inches caused additional harm to plaintiffs. The court below properly, if perhaps somewhat conservatively,[10] found that the value of the right to make and sell large emblems was at least as valuable as the right to market the small ones and included an equivalent sum in its calculation of damages. We agree with this reasoning, but because this calculation also was based upon the usurpation of an exclusive license, we hold that the additional amount awarded is clearly erroneous. The right to manufacture and sell large emblems was also a nonexclusive one because of Lion Brothers' license from plaintiffs, and the worth of this right must be calculated on that basis. If it was at least as valuable as the right to produce and market small emblems, this additional nonexclusive right would also be worth $15,000 for three years. Dallas Cap's four-year infringement of the right to manufacture and sell emblems larger than three inches damaged plaintiffs in the amount of $20,000. Therefore, actual damages in the total amount of $40,000 were suffered by plaintiffs as a result of defendant's infringement.

---

9. We believe the lower court necessarily inferred that the reference to "all emblems sold" in paragraphs 5 and 6 meant only the emblems that were the subject of the letter—the three-inch emblems. We think this inference to be the correct one, although, in light of defendant's concession in its brief that the $15,000 offer related only to the small emblems, the point is not crucial to our decision.

10. Defendant's accountant testified that the profit margin on the large emblems was fifteen times greater than that on the three-inch ones.

Section 35 of the Lanham Act [11] gives the trial judge discretion to award any amount in excess of actual damages, not to exceed three times that amount, according to the circumstances of the case. The court below exercised this discretion, doubling the actual damages because of defendant's "bad faith." As examples of this bad faith, the court found that Dallas Cap had violated the spirit of an injunction against selling the emblems without an appropriate disclaimer,[12] had failed to disclose in discovery sales of large emblems, and also had failed to disclose in discovery complete sales records of the small emblems. Because we are unable to give meaningful review to this award of increased damages, we must remand for further findings.

Damage awards in excess of actual damages found have been upheld in Lanham Act cases involving "deliberate and fraudulent infringement," *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191 (2d Cir. 1959), or conduct described as "fraudulent" and "wilful and calculated to trade upon the plaintiff's good will." *H. A. Friend & Co. v. Friend & Co.*, 276 F.Supp. 707 (C.D.Cal. 1967), aff'd, 416 F.2d 526 (9th Cir. 1969), cert. denied, 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970). We note also that the statutory language, which allows discretion to increase actual damages found "according to the circumstances of the case," appears sufficiently broad to encompass other situations. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978). We decline, however, to speculate on the variety of possible circumstances that might justify increased damages in other cases. We hold only that increased damages cannot be upheld on the basis of the findings made below.

We do not question the accuracy of the findings made by the trial court; we are simply unable to determine from them whether on the facts of this case increased damages should be considered an abuse of discretion, as defendant argues. The trial court seemingly doubled damages because Dallas Cap violated an injunction imposed by the court and also failed to comply with its obligation to answer pretrial discovery completely. These are examples of conduct for which other, appropriate sanctions were readily available. We would be reluctant to approve increased damages intended solely as punishment for conduct unrelated to the trademark infringement or to the actual damages caused by it. On the other hand, we might agree that increased damages may be justified by defendant's withholding or misrepresenting available sales records, which would have the effect of making much more difficult, if not impossible, plaintiffs' proof of damages or profits. Certainly, an infringer should not be allowed to limit a trademark owner to injunctive relief by "stonewalling" the question of infringing sales. The trial court did not so find, however, and we are unable to ascertain from the written findings whether the incomplete answers were merely attributable to poor recordkeeping practices. Dallas Cap argues on appeal that all records in its possession were made available to plaintiffs' accountant, and the broad, general conclusion that Dallas Cap acted in bad faith cannot be properly reviewed without more specific findings.

Plaintiffs argue that defendant's deliberate taking of manufacturing rights after being denied a license was willful trademark infringement, but the trial court made no such finding in discussing either that specific conduct or defendant's conduct

---

**11.** 15 U.S.C. § 1117.

**12.** The first disclaimer Dallas Cap placed on the emblems stated that they were "not authorized by the NHL or its members." But "NHL" was placed in the center of the circular disclaimer in much larger letters than the other words. A later disclaimer replaced "NHL" with "National Hockey League" in letters of the same size as the rest of the inscription. All disclaimers, however, were affixed to the back

of the emblems. They could not be seen unless the emblems were displayed face down—an unlikely possibility. Some of the three-inch emblems were sold in sealed packs; their disclaimers could be seen only if the packs were opened and the emblems turned over. The lower court found that the size of the letters "NHL" and the location of the disclaimer were examples of bad faith.

**78**

subsequent to the first trial. We express no opinion whether Dallas Cap was a willful trademark infringer, either by virtue of its reproduction and sale of the emblems or by virtue of its violation of the injunction. Neither will we infer a finding so as to uphold the increased damage award on the basis of nondisclosure of sales records. We are not to engage in appellate factfinding. Moreover, even if we were to infer findings to justify increased damages, the discretion given by the Lanham Act to impose additional damages if the circumstances of the case warrant additional relief is to be exercised by the trial court and not by us. Therefore, we must remand for the trial judge to exercise her discretion in this regard.

■ Attorneys' fees were requested by plaintiffs but were correctly denied by the court below. Under the version of the Lanham Act applicable to this suit, attorney fees were not recoverable. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).[13] The rule in this country has long been that attorney fees are not ordinarily recoverable in the absence of a statute or an enforceable contract providing for their recovery. *Id.* at 717, 87 S.Ct. 1404. Neither is present here, and plaintiffs' arguments for an exception to the rule are unpersuasive.

Accordingly, and summarizing, we hold:

1. The findings that the separate rights usurped by Dallas Cap were each worth $33,000 are clearly erroneous.

2. Actual damages in the amount of $40,000 were proved by plaintiffs—$20,000 attributable to Dallas Cap's usurpation of the nonexclusive right to manufacture and sell three-inch emblems, and an equivalent sum attributable to its usurpation of an identical right involving larger emblems.

3. The doubling of damages cannot be upheld upon the basis relied on by the trial judge. Her discretion to do or not to do so must be re-exercised on a proper basis.

4. The denial of attorney fees is AFFIRMED.

5. To the above extent, the judgment is VACATED and REMANDED for appropriate findings.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

---

13. The statute was amended by Congress in 1975 and now allows recovery of attorney fees in "exceptional cases." This action was commenced in 1972, however, and the amendment does not apply to it. 15 U.S.C. § 1117. *See Five Platters, Inc. v. Purdie*, 419 F.Supp. 372 (D.Md.1976).