HOLIDAY INNS, INC.

v.

AIRPORT HOLIDAY CORPORATION
and Tex-Mex Inn Operating
Company, Inc.

Civ. A. No. 3–76–0738–C.

United States District Court,
N. D. Texas,
Dallas Division.

July 23, 1980.

E. Eldridge Goins, Jr., Goins & Underkofler, Dallas, Tex., James L. Kurtz, Washington, D. C., for plaintiff.

C. Terry Hagin, Blankenship & Potts, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This action was brought for trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.* This Court has jurisdiction of this controversy and these parties because of 28 U.S.C. § 1338. Defendants were found liable to Plaintiff for infringement and unfair competition in an order granting a partial summary judgment on December 19, 1978. That order also enjoined Defendants from infringing Plaintiff's servicemarks and from competing unfairly with Plaintiff. That injunction will, of course, be continued upon entry of final judgment.

The only issues remaining are those arising under Section 35 of the Lanham Act, 15 U.S.C. § 1117.[1] Four principal questions as to monetary recovery must be answered at the present time. They are:

(1) What profits of Defendants is Plaintiff entitled to?

(2) What damages has Plaintiff suffered?

(3) Should those profits be increased or decreased and should the damages be multiplied? and,

(4) Is this an exceptional case?

Defendant Airport Holiday Corporation is the owner of a motel facility at 7800 Lemmon Avenue, Dallas, Texas. Defendant Tex-Mex Inn Operating Company, Inc. ("Tex-Mex") operates the motel for Airport Holiday Corporation. From March 26, 1956 until February 28, 1975, Tex-Mex was a licensee of Plaintiff. This license entitled

---

1. Section 35 provides:

"When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this Chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title and to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive, the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party."

Tex-Mex to use, among other things, Plaintiff's servicemarks for Plaintiff's name, Holiday Inn, and its Great Sign which is used at the 1400 motels in this country.

On February 28, 1975, Plaintiff terminated Tex-Mex as a licensee. After that date, Defendants used the name Holiday Hotel until at least the date of trial. Defendants paid no royalties to Plaintiff after the termination for the use of Plaintiff's servicemarks.

Defendants used the servicemarked Great Sign in unaltered form until June 5, 1975. A few changes in its appearance were made then, but they were not significant. The Great Sign was finally removed from Defendants' premises on January 1, 1979.

Defendants also used a sign on a pole facing a street running beside the motel which had on its face the words "Holiday Inn" in a script form identical to that which is covered by a servicemark owned by Plaintiff. This sign was used for approximately 14 months after February 28, 1975.

As would be expected, the agreement between Plaintiff and Tex-Mex provided that upon termination,

.   .   .   [A]ll rights of Licensee hereunder shall thereupon terminate, and Licensee shall immediately thereafter cease to use, by advertising or otherwise, directly or indirectly, the said System, or any parts thereof; and without limiting the generality of the foregoing, the Licensee shall cease to use, and shall withdraw from use, the words "Holiday Inn" or any combination of words similar thereto or suggestive thereof, the trade names, trade marks, service marks, color schemes and patterns, slogans, designs, signs, emblems, of the System or in any wise similar hereto or suggestive thereof; and the Licensee shall withdraw from use, all signs, furniture, furnishings, advertising matter, stationery, forms, or any other articles which display the words "Holiday Inn", the trade names, trade marks, service marks, color schemes or patterns, slogans, designs, signs, or emblem of the System, or identified with the System, or similar thereto, or suggestive thereof;

and Licensee agrees, upon any such termination, to cease and refrain from holding Licensee out to the public in any way as a member of the System, or as a Licensee or operator of a "Holiday Inn" and to distinguish Licensee's inns thereafter so clearly from those of the Licensor, and from those within the System, as to avoid all possibility of any confusion by the public. Licensee agrees that the Licensor shall be entitled to injunctive and equitable relief for any violation of this Part Sixth of this agreement, and Licensee agrees to pay all costs and expenses, including reasonable attorney's fees, incurred by Licensor in enforcing this Part Sixth of this agreement, or any other part of this agreement, as a result of Licensee's violation of, or default in performing, this Part Sixth, or any other part, of this agreement.

Plaintiff requested in its February 28, 1975, letter terminating the license agreement that Tex-Mex remove all indicia pertaining to Plaintiff and its servicemarks. Defendants did not, and Plaintiff sent another letter on March 12, 1975, demanding the same. As the result of Defendant's non-compliance, Plaintiff filed this civil action on May 26, 1976.

Defendants had the Great Sign repaired and light bulbs replaced after the license was terminated. This clearly shows that it was used, and used day and night. After this Court entered its injunction, Defendants had the Great Sign covered with a large plastic bag at the approximate cost of $1,000.

■ Mr. Randuk, Tex-Mex's general manager of the motel since February 28, 1975, testified that when he took over the operation of the motel it was a failing business. He further testified that in order to bring in business immediately he crossed Lemmon Avenue to Love Field Airport and beat on doors in order to get weekly business. He was successful and managed to bring in sufficient revenue to keep the doors open, and, after a period of time, to make a profit. He testified that 70% of the

business of the motel was weekly and only 30% was transient business. This weekly trade was due to Mr. Randuk's personal efforts to obtain such business. It was not due to any potential patron of a Holiday Inn seeing either of the two signs or reading the name of the motel, Holiday Hotel. Therefore, only 30% of Defendants' profits are attributable to their infringement and unfair competition.

The parties have stipulated that the total profits of the motel for the period of March 1, 1975 to January 1, 1979, were $38,215. Thirty per cent of $38,215 is $11,464.50, the profits obtained due to the infringement and unfair competition.

■ The Fifth Circuit ruled in *Boston Professional Hockey Ass'n. v. Dallas Cap Mfg.*,[2] that royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks. Plaintiff charges what it terms a royalty fee and an advertising fee for the use of its marks. From March 1, 1975 to December 31, 1977, the royalty fee was fifteen cents per room per night or three per cent of room sales, whichever was higher. In 1978, the royalty fee was four per cent. The advertising fee during the period from March 1, 1975 to December 31, 1978, was one per cent of room sales. Defendants' room sales were:

| | |
|---|---|
| 3/1/75 to 12/31/75 | $219,199 |
| 1/1/76 to 12/31/76 | 325,109 |
| 1/1/77 to 12/31/77 | 409,600 |
| 1/1/78 to 12/31/78 | 547,551 |

The total royalty fee payable by Tex-Mex for these years would have been $54,320. The advertising fee would have been $15,015.

Defendants contend that the royalty fee set in their license agreement should be the measure of damages. But they had lost their license and should respond in damages at the going rate in the market place. So the $54,320 is figured at the rate of four per cent for the year 1978, not the three per cent specified in their termination contract.

But Plaintiff is not entitled to the entire $69,335 ($54,320 + $15,015) as damages.

Seventy per cent of room sales were due to Mr. Randuk's efforts and only thirty per cent due to potential patrons of Plaintiff's licensees seeing Defendants' motel with the infringing and unfair use of Plaintiff's marks. Therefore Plaintiff's damages are thirty per cent of $69,335 or $20,800.50.

■ The third question set out above must be answered yes. The profits should be increased and the damages should be multiplied. Defendants did not undertake to use Plaintiff's marks innocently. They knew that Plaintiff had marks for the Great Sign, the name Holiday Inn and the script rendering of Holiday Inn that appeared on the subsidiary sign. Indeed, the subsidiary sign bore upon its face the symbol (R) indicating the registration of the Holiday Inn mark. This is flagrant disregard of the rights of Plaintiff. Full knowledge of the proprietary nature of a mark and the infringement and misuse of the mark is the height of flagrancy and willful conduct for which a maximum award should be made. Therefore, both the profits ($11,464.50) and damages ($20,800.50) will be trebled for a total award in the amount of $96,795.00.

Beyond this is the provision of the 1956 licensing agreement in which Tex-Mex agreed to stop using the marks upon the termination of the agreement. The violation of this agreement over a substantial period of time (that only ended upon order of this Court) is the exceptional circumstances for which Congress intended attorneys fees to be awarded. Plaintiff will be given the opportunity to offer proper proof of its attorneys' fees and judgment will then be entered accordingly.

2. 597 F.2d 71 (5th Cir. 1979).