**DEERING, MILLIKEN & CO., Inc.,**
**Plaintiff-Appellee,**
**v.**
**Joseph GILBERT, individually and doing business as Gilbert Textile Company,**
**Defendant-Appellant.**
**No. 242, Docket 25284.**

United States Court of Appeals
Second Circuit.
Submitted April 10, 1959.
Decided Aug. 3, 1959.

Walter E. Shuttleworth, New York City (Townley, Updike, Carter & Rodgers, and Stuart N. Updike, New York City, on the brief), for plaintiff-appellee.

Mario Matthew Cuomo, Brooklyn, N. Y. (M. Malcolm Friedman, and William C. Mattison, Brooklyn, N. Y., on the brief), for defendant-appellant.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

This appeal is taken from a judgment and decree of the District Court, Southern District of New York, Edmund L. Palmieri, Judge, entered after a trial without a jury on two causes of action, the first alleging trademark infringement under the Lanham Act (15 U.S. C.A. § 1051 et seq.) and the second alleging a substantial and related claim of unfair competition pursuant to 28 U.S.C. § 1338.

Judge Palmieri, having found that the defendants, Gilbert and his *alter ego* the Gilbert Textile Company, had infringed upon Deering, Milliken & Company's registered trademark *Milium,* enjoined Gilbert from further use of the mark. He also awarded Deering Milliken the sum of $23,419.26, which in part represented $6,056.25 actual damages sustained by it, trebled to $18,168.75.

The questions raised here by the appellant Gilbert concern the validity of the findings of actual damages and the propriety of trebling the amount so found. No error is predicated upon the balance of the judgment which includes attorneys' fees and costs.

Deering Milliken at all times relevant to this action was the owner of the trademark *Milium,* said mark having been duly registered upon the Principal Register maintained in the United States Patent Office. It also was the owner of patents upon certain textile products and finishes in conjunction with which the *Milium* mark was used. At no time was Gilbert licensed to use the trademark or manufacture the patented product.

In July of 1954 Gilbert embarked on a criminal scheme, calculated to trade upon the *Milium* trademark. On three occasions between July 1954 and May 1955 Gilbert caused to be printed and delivered to his place of business a total of 67,600 counterfeit hang tags bearing appellee's *Milium* trademark.[1] During this period Gilbert also had in his possession an unknown quantity of fabric imitative of the distinctive fabric processed under the Deering Milliken patents. This fabric had been stolen from another textile company and criminally received by Gilbert for use in conjunction with the counterfeit tags.[2]

---

1. Gilbert was prosecuted in the state courts on a charge of counterfeiting a trademark (New York Penal Law, § 2354) and upon his plea of guilty in the Court of Special Sessions, was fined and given a suspended sentence.

2. In yet another state prosecution, Gilbert pled guilty in the Court of General Ses-

In May 1955, New York City Police, acting under a search warrant, entered the premises occupied by Gilbert and the Gilbert Textile Company and pursuant to the warrant seized a substantial quantity of cardboard hang tags and fabric labels bearing the *Milium* mark. These tags and labels remained in possession of the New York County District Attorney until and throughout the trial below.

Upon pre-trial examination Gilbert exercised his privilege against self incrimination. At the trial, he denied all sales of *Milium* but even after the judge stated that his testimony was "not worthy of belief," instead of producing records to show what it was he had sold, he produced no records at all. His position then, as it has been throughout these proceedings, was one of "sitting tight" and demanding that Deering Milliken prove the damages sustained by it as a result of his infringing sales. Faced with the task of proving the scope of Gilbert's shady operation, Deering Milliken was forced to resort to indirect and circumstantial evidence.

First it attempted to establish the number of tags that were in Gilbert's possession at the time of the police seizure in May 1955, and from this it asked the trial judge to infer that the balance of the tags were used by Gilbert. Expert testimony was then introduced which established that one tag is used in connection with the sale of one garment lining and that one garment lining contains two and one-half yards of the special *Milium* fabric. On this evidence, Judge Palmieri found that the missing hang tags represented 80,750 yards of fabric which had probably been sold to the public as *Milium* fabric under the *Milium* trademark. Multiplying this figure by the minimum royalty received by Deering Milliken (seven and one-half cents per yard) he arrived at the contested $6,056.25 amount.

Appellant first challenges this method of computation of damages, claiming that there was no direct proof of his sales and that the District Court improperly inferred that 32,300 garment linings were sold in order to exploit the like number of missing tags.

Under the circumstances, we think this method of proof was proper. At the trial, when called as a witness for the plaintiff, Gilbert was patently evasive: he denied any palming off and cloaked his answers by a short memory. When the plaintiff rested, the trial judge stated that the witness was unworthy of belief. At this point, the burden of going forward with evidence to refute the plaintiff's estimates of sales passed to Gilbert. His failure and refusal to produce the most satisfactory evidence of sales—or absence of sales—leaves his cause exposed to indirect and less definite and certain methods of proof. Armstrong v. Belding Bros. & Co., 2 Cir., 297 F. 728, certiorari denied 265 U.S. 585, 44 S.Ct. 459, 68 L.Ed. 1192; Yesbera v. Hardesty Mfg. Co., 6 Cir., 166 F. 120, certiorari denied 214 U.S. 513, 29 S.Ct. 696, 53 L. Ed. 1063. And where, as here, the defendant controls the most satisfactory evidence of sales the plaintiff needs only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Gotham Silk Hosiery Co. v. Artcraft Silk Hosiery Mills, 3 Cir., 147 F.2d 209.

In Shapiro, Bernstein & Co. v. Remington Records, 2 Cir., 265 F.2d 263, this court in applying the ancient but viable doctrine of Armory v. Delamirie, 1 Strange 505, 93 Eng.Rep. 664 (1722), received expert testimony as to the number of phonograph records manufactured by a willful copyright infringer. There as here the defendants "prevented proof by

sions to the crime of knowingly receiving stolen property (New York Penal Law §

1328), received a suspended sentence and was ordered to make restitution.

direct evidence of the true facts essential to an accurate determination of the royalties due under the [Copyright] Act." Guided by these principles and considering the circumstances which made direct proof impossible, we find that the formula applied by the District Court provided a sound basis for a reasoned conclusion as to the damage sustained by Deering Milliken.

Each hang tag was used in the trade to identify one garment lining sold under the *Milium* trademark, and it is not unreasonable to infer that Gilbert put the missing tags to their intended use. The burden of going forward to show that the tags were not put to such use was upon the defendant. This burden was met by silence and evasion: conduct more persuasive than any presumption or direct evidence. The finding that two and one-half yards of fabric went into one garment lining is amply supported by the evidence. The finding that seven and one-half cents was the minimum royalty received by Deering Milliken was unchallenged below and in this court.[3] The finding as to the number of missing tags was supported by the testimony of two witnesses, one of whom was a Property Clerk in the office of the New York District Attorney. Gilbert was given ample opportunity to rebut this testimony by making his own count of the number of remaining tags. This he failed to do. The finding below that the number of missing tags was 32,300 is not clearly erroneous.

Whatever risk of uncertainty may attach to this formula is one which must be borne by the willful infringer and not by the injured innocent party. Story Parchment Co. v. Paterson Co., supra.

■ The appellant further claims that the award of damages, $23,419.86, must fall because it was arrived at by trebling the sum of $6,056.25 which represented the defendant's profits rather than the plaintiff's actual damages.[4] Only the plaintiff's actual damages, the appellant now contends, may be trebled under 15 U.S.C.A. § 1117. But that statute in so far as immediately pertinent reads:

" \* \* \* In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty."

Thus it is apparent from the face of the statute that the court in formulating its award has as much discretion as to the defendant's profits as it has over the plaintiff's damages. The only difference is that the statute places no precisely stated ceiling over the amount of the defendant's profits which may be included in the award. Especially in view of the deliberate and fraudulent nature of the infringement, we could not find it an abuse of discretion if the judge had trebled the defendant's profits measured by the plaintiff's minimum license fee which the defendant by its infringement had "saved."

■ However, in the situation here it is not necessary to treat the award as based only on the defendant's profits. For the infringement of the trademark was an injury to the plaintiff's property

3. Since no claim for patent infringement was made, it should be noted that neither here nor below is the question raised that the seven and one-half cent royalty was applicable in part to the license under the patent and that an apportionment of the royalty should be made. This question is not decided, although on the record before us it appears that the patent and trademark licenses are inseparable.

4. The balance of the award was on account of counsel fees.

rights in its trademark. And profits wrongfully made by the infringer may be taken as one measure of the plaintiff's actual damages. Pastificio Spiga Societa Per Azioni v. De Martini Macaroni Co., Inc., 2 Cir., 200 F.2d 325. Cf. Leman v. Krentler-Arnold Hinge Last Co., 284 U. S. 448, 52 S.Ct. 238, 76 L.Ed. 389. It follows that the award was based on the plaintiff's damages and none the less so to the extent that the damages happened to be measured by the defendant's profits. Dad's Root Beer v. Doc's Beverages, 2 Cir., 193 F.2d 77.

Affirmed.