UNITED STATES of America, Plaintiff-Appellee,

v.

Paul Quentin BAKER, Defendant-Appellant.

No. 86–2233
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 24, 1986.

Thomas S. Berg, Asst. Federal Public Defender, Roland E. Dahlin, II, Houston, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., Susan L. Yarbrough, Asst. U.S. Atty., Appellate Div. James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

---

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

Paul Baker appeals his conviction for trafficking in counterfeit goods, claiming that an element of the offense is knowledge of the criminality of the conduct and that the jury should have been so charged. We reject his contention and affirm his conviction.

## I

Prior to 1984 trademark counterfeiting was addressed by the civil penalties found in the Lanham Act, 15 U.S.C. §§ 1051–1127. In 1984, however, Congress determined that "penalties under [the Lanham] Act have been too small, and too infrequently imposed, to deter counterfeiting significantly." S.Rep. No. 526, 98 Cong., 2d Sess. 5 (1984), *reprinted in* 1984 U.S. Code Cong. & Ad.News 3182, 3627, 3631. Accordingly, Congress enacted the Trademark Counterfeiting Act of 1984, Pub.L. No. 98–473, tit. 11, chap. XV, 98 Stat. 2178, criminalizing much of the conduct that formerly had been subject only to civil penalties. The statute subjects to criminal penalties anyone who

intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services.

*Id.* § 1502(a) (codified at 18 U.S.C. § 2320).

Paul Baker was convicted under this new statute for dealing in counterfeit watches. He does not dispute that he intentionally dealt in the watches. He also admits that he knew the "Rolex" watches he sold were counterfeit. His contention is that the statute requires that he act with knowledge that his conduct is criminal. He asserts that he did not know trafficking in counterfeit goods is criminal and that he would not have done so had he known he was committing a crime. The district court denied a motion to dismiss on this ground and refused to instruct the jury that Baker could not be convicted if he did not have the purpose to "disobey or disregard the law." Baker's sole contention on appeal is that the statute requires knowledge that the conduct is criminal and that the district court's rulings were thus erroneous.

## II

Although this is a case of first impression as to this statute, the underlying legal principles are well established. "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434 (1985). Thus our job on this appeal is to determine what Congress intended when it enacted the statute under which Baker was convicted. Both the language of the statute and the legislative history lead to the inescapable conclusion that Baker need not have known his conduct was a crime.

The statute clearly sets out the elements of the crime and the mental state required for each element. The defendant must intentionally deal in goods and he must knowingly use a counterfeit mark in connection with those goods. There is no ambiguity in this language and nothing in the statute suggests that any other mental state is required for conviction. The plain language of the statute—"the most reliable evidence of its intent," *United States v. Turkette*, 452 U.S. 576, 593, 101 S.Ct. 2524, 2534, 69 L.Ed.2d 246 (1981)—thus counsels us to reject Baker's position. As we have earlier stated, "we will not presume from congressional silence that Congress intended to make knowledge a prerequisite to violating the statutory provision." *United States v. Schmitt*, 748 F.2d 249, 252 (5th Cir.1984), *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985).

Our reading of the statute is confirmed by resort to the legislative history. The committee reports on the bill contain detailed descriptions of the mental states required for conviction, yet nowhere do they

state that knowledge of illegality is an element of the crime. For example, the Senate Judiciary Committee report states:

> Subsection 2320(a) forbids intentional trafficking in goods or services when the defendant knows the goods or services are counterfeit. Thus, the bill has two mental state requirements: first, that the defendant "intends" to traffic in goods or services, and second, that he or she "knows" that the goods or services are counterfeit.

S.Rep. No. 526, 98 Cong., 2d Sess. 11 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3627, 3637; *see also* H.R.Rep. No. 997, 98 Cong., 2d Sess. 10 (1984). We can hardly imagine a clearer legislative history against Baker's position. When Congress states that a statute has two mental state requirements, we cannot legitimately hold, as Baker would have us, that the statute has three mental state requirements.

It is not surprising that Congress would allow conviction of one who knows that he is selling bogus "Rolex" watches even though he does not know his conduct is punishable as a crime. While it is true that "the general principle that ignorance or mistake of law is no excuse is usually greatly overstated" (American Law Institute, Model Penal Code § 2.02 comment 131 (Tent.Draft no. 4 1955)), the principle continues to be valid to the extent that ordinarily "the criminal law does not require knowledge that an act is illegal, wrong, or blameworthy." *United States v. Freed*, 401 U.S. 601, 612, 91 S.Ct. 1112, 1119, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring).[1] Baker's claim is merely that, even though he had the mental states required by the face of the statute, he should not be convicted because he did not know

that Congress had passed a statute criminalizing his conduct. This clearly is not the law. A defendant cannot "avoid prosecution by simply claiming that he had not brushed up on the law." *Hamling v. United States*, 418 U.S. 87, 123, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974).

For these reasons, Baker's reliance on *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), is misplaced. The Court in that case analyzed a statute providing criminal penalties for anyone who "knowingly transfers, acquires, alters, or possesses [food stamp] coupons or authorization cards in any manner not authorized by [statute] or regulations." 7 U.S.C. § 2024(b)(1). The Court found that Congress intended the word "knowingly" to modify the final phrase of the statute and thus to make knowledge of the statutes and regulations an element of the offense. It held, therefore, that the statute required that a defendant know his activity—e.g., transfer or possession of the stamps—was not authorized by statute or regulations.

The Court expressly rejected the idea, however, that it was creating a mistake of law defense. It stated that, while one had to know that his activity was unauthorized, "it is not a defense ... that one did not know that possessing food stamps in a manner unauthorized by statute or regulations was illegal." *Id.* 105 S.Ct. at 2088 n. 9. In other words, the law about which the defendant has to know is "not the law defining the offense; it is some other legal rule that characterizes the attendant circumstances that are material to the offense." American Law Institute, Model Penal Code § 2.02 comment 131 (Tent. Draft no. 4 1955), *cited in Liparota*, 105

---

1. A noted treatise in the area summarizes this principle as follows:

    It bears repeating here that the cause of much of the confusion concerning the significance of the defendant's ignorance or mistake of law is the failure to distinguish two quite different situations: (1) that in which the defendant consequently lacks the mental state required for commission of the crime and thus ... has a valid defense; and (2) that in

which the defendant still had whatever mental state is required for commission of the crime and only claims that he was unaware that such conduct was proscribed by the criminal law, which ... is ordinarily not a recognized defense.

W. LaFave & A. Scott, Criminal Law § 47, at 362–63 (1972). Baker's contention clearly falls within the second of the situations described.

S.Ct. at 2088 n. 9. A defendant could be convicted without any knowledge whatsoever of the law making his conduct criminal. *Liparota,* therefore, merely held that, as to one statute, Congress intended to make knowledge of an attendant legal rule (authorized possession of stamps) an element of the offense. It does not stand for the proposition that a defendant can be excused by ignorance of the law that makes his conduct criminal.

AFFIRMED.