**LOUIS VUITTON, S.A., Plaintiff,**

v.

**AFTER DARK BOUTIQUE and Linda Hoffman, Defendants.**

**No. TCA 86–7281–WS.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Jan. 29, 1988.

---

W. Douglas Hall, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, Fla., Bruce H. Lederman, Robert P. Devlin, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for plaintiff.

Edgar C. Booth, Booth & Associates, Tallahassee, Fla., for defendants.

## MEMORANDUM OF DECISION

STAFFORD, Chief Judge.

In this action, plaintiff Louis Vuitton, S.A. ("Vuitton") seeks (a) permanent injunctive relief restraining defendants from trafficking in counterfeit Vuitton merchandise and (b) treble damages, attorneys' fees, and investigatory fees pursuant to 15 U.S.C. §§ 1114, 1116, 1117 and 1125, and the common law, as relief from defendants' acts of trademark infringement, false designation of origin and unfair competition.

This matter was tried before the court without a jury on September 9, 1987.

After presentation of the case, the court has determined that judgment should be entered in favor of plaintiff and against defendants.

Pursuant to Rule 52(a), Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Louis Vuitton S.A. ("Vuitton") is a *societe anonyme* duly organized and existing under the laws of the Republic of France, having its principal place of business in Paris, France. (Pre-trial Stipulation No. 1).

2. Defendant Linda Hoffman conducts business activities, including those complained of, within the Northern District of Florida.

3. As to defendant After Dark Boutique ("ADB"), plaintiff contends that ADB conducts business in this district and that Hoffman is a principal of ADB. Hoffman denies the existence of ADB and asserts she is not a principal. The Florida Secretary of State's office has no record of the existence of ADB. However, witness Melvin Weinberg testified without contradiction, that on September 10, 1986, he was given an ADB business card (trial exhibit 10) by a person conclusively identified as defendant Linda Hoffman. Weinberg received the ADB business card while purchasing a counterfeit Vuitton bag from Hoffman. Hoffman advised Weinberg that she (Hoffman) could be reached at the toll free telephone number on the card. Weinberg's testimony confirms the existence of ADB and defendant Hoffman's business relationship with ADB. Defendant Linda Hoffman does business as After Dark Boutique.

4. At some time prior to trial, defendant Linda Hoffman resided at 133–7 Oak Street, Tallahassee, Florida (Pre-trial Stipulation No. 2). Ms. Hoffman's whereabouts at the time of trial are unknown. Although it appears that Hoffman was fully cognizant of the trial date and despite the efforts of defendants' counsel Edgar C. Booth to have Ms. Hoffman present at the trial, Hoffman failed to appear and the trial proceeded without her.

5. Vuitton, through its affiliated companies, is engaged in the sale and distribution in interstate and foreign commerce of prestigious merchandise, including a wide variety of luggage, ladies' handbags, steamer trunks, garment bags, eyeglass cases, belts, wallets, jewelry cases and various other similar items. These products are generally sold throughout the United States in high quality retail stores, such as Saks Fifth Avenue and Neiman–Marcus. (Pre-trial Stipulation No. 4).

6. Vuitton's merchandise has been widely advertised, offered for sale, sold and distributed throughout the United States under Vuitton's trademarks, including a trademark consisting of a distinctive pattern and arrangement of initials and designs. This trademark has been used by Vuitton in the United States for more than 50 years. (Pre-trial Stipulation No. 5).

7. Because of Vuitton's exclusive and extensive use and promotion of its trademark, it has acquired considerable value and has become well known to the consum-

ing public and trade as identifying and distinguishing Vuitton exclusively and uniquely as the source of products to which it is applied. (Pre-trial Stipulation No. 6).

8. On July 6, 1979, Vuitton's trademark was entered on the Principal Trademark Register of the United States Patent and Trademark Office and since September 20, 1932, has been registered with the United States Patent and Trademark Office as Registered Trade–Mark 297,594. This registration is in full force and effect. At all times, it has been owned exclusively by Vuitton or its predecessors. This registration has been duly recorded with the Department of the Treasury, United States Customs Service, in accordance with the trademark laws of the United States. (Pre-trial Stipulation No. 7). (Trial Exhibits 1 and 2). Vuitton has never authorized or consented to defendants' use of its registered trademarks.

9. In or about November 1984, Linda Hoffman commenced selling merchandise, at retail, at the Tallahassee Flea Market and the Florida State University Flea Market. (Transcript of the deposition upon oral examination of Linda Hoffman, which was admitted in evidence as Trial Exhibit 26 ("Dep. Transcript") at 6)). Since Linda Hoffman failed to appear at the trial, the court accepts, as true, all admissions she made at her deposition upon oral questions. (Pre-trial Stipulation No. 9).

10. In or about the spring of 1985, Linda Hoffman commenced selling counterfeit Vuitton merchandise at flea markets. (Dep. Transcript at 9).

11. In or about the summer of 1985, Linda Hoffman commenced selling, at wholesale, merchandise to Smiths' Town Shop ("Smiths") in Fort Walton Beach, Florida. (Dep. Transcript at 12). (Pre-trial Stipulation No. 11).

12. In or about January 1986, Linda Hoffman received a brochure entitled Designer Look–A–Like Bags, which contains pictures of counterfeit Vuitton merchandise. (Pre-trial Stipulation No. 12). (Trial Exhibit 11).

13. On or about February 24, 1987, Linda Hoffman sold six articles of counterfeit Vuitton merchandise to Smiths for $201.00. (Trial Exhibits 13 and 14).

14. On or about May 27, 1986, Linda Hoffman sold four articles of counterfeit Vuitton merchandise to Smiths for $58.00. (Trial Exhibits 16 and 17).

15. During June 1986, Linda Hoffman visited the Saks Fifth Avenue store in Cincinnati, Ohio, and observed genuine Vuitton merchandise being offered for sale. She noted the prices of this genuine Vuitton merchandise, and the fact that Saks was offering Vuitton drawstring bags (similar to one which she sold for $45.00) for sale at $275.00. (Pre-trial Stipulation No. 15). (Dep. Transcript at 44–45).

16. On or about July 7, 1986, Linda Hoffman sold six articles of counterfeit Vuitton merchandise to Smiths for $258.50. (Trial Exhibits 18, 19 and 20).

17. On or about July 14, 1986, Linda Hoffman sold four articles of counterfeit Vuitton merchandise to Smiths for $206.00. (Trial Exhibits 21 and 22).

18. On or about July 26, 1986, Linda Hoffman sold seven articles of counterfeit Vuitton merchandise to Smiths for $303.00. (Trial Exhibit 23).

19. On or about September 10, 1986, Melvin Weinberg, a consultant engaged by Vuitton's counsel, visited a flea market booth operated by Linda Hoffman at the Florida State University ("FSU") in Tallahassee, and observed Ms. Hoffman offering for sale 15 articles of counterfeit Vuitton merchandise. Mr. Weinberg purchased a counterfeit Vuitton bag for $50.00 (Trial Exhibit 4), which was representative of her counterfeit Vuitton merchandise. Linda Hoffman advised Mr. Weinberg that the counterfeit bag was "real." Ms. Hoffman knew that this representation was false. Linda Hoffman gave Mr. Weinberg a business card (Trial Exhibit 10) indicating that she also did business as "After Dark Boutique." (Ms. Hoffman and After Dark Boutique shall hereinafter be referred to as "defendants.") Mr. Weinberg's testimony at trial regarding his observations while purchasing the merchandise is consistent with the photographs he took of Linda

Hoffman on September 10, 1986. These photographs were introduced into evidence as Trial Exhibits 5, 6, and 7. An authentic Vuitton satchel (Trial Exhibit 3) was introduced into evidence, and the court compared it to the bag purchased by Mr. Weinberg (Trial Exhibit 4).

20. On or about October 22, 1986, Linda Hoffman was offering seven (7) or eight (8) articles of counterfeit Vuitton merchandise for sale when she was served with the summons and complaint in this action. This finding is predicated upon Mr. Weinberg's testimony at trial and the photographs he took of Linda Hoffman on October 22, 1986. (Trial Exhibits 8 and 9).

21. While defendants maintained no records reflecting their sale of counterfeit Vuitton merchandise at flea markets, Linda Hoffman admitted during her deposition and stipulated before trial, to selling her "Vuitton" merchandise at flea markets for a period of 17 months. (Dep. Transcript at 9).

22. Since defendants failed to maintain any records of their counterfeit Vuitton sales, the differential between the articles observed by Mr. Weinberg on September 10, 1986 (fifteen) and October 22, 1986 (seven or eight) (i.e., seven (7) to eight (8) articles in approximately five weeks) represents a reasonable alternative means of determining defendants' sales. Thus, the court finds that, on average, during a 17 month period, defendants sold at least 6 articles of counterfeit Vuitton merchandise per month. The court further finds that the average sales price of each article was $50.00, the price which Mr. Weinberg paid for Trial Exhibit 4.

23. The court has considered Ms. Hoffman's testimony that her "mark-up" on counterfeit Vuitton merchandise was minimal. (Dep. Transcript, at 53 and 118). The court does not find this testimony to be entirely credible. The court accepts the testimony of Mr. Weinberg, plaintiff's consultant and an expert in the sale of counterfeit Vuitton merchandise, that the typical mark-up on sales of counterfeit Vuitton merchandise is at least 100%. Mr. Weinberg's testimony is, in this regard, consistent with the testimony of H. Gene Smith, who testified that he sold counterfeit Vuitton merchandise for approximately twice its cost to him. Accordingly, the court finds, as a matter of fact, that defendants sold at least 102 articles of counterfeit Vuitton merchandise at flea markets during a 17 month period, at an average profit of $25.00 per article (representing one-half the sales price). Defendants, therefore, generated profits of at least $2,550.00 from the sale of counterfeit Vuitton merchandise at flea markets.

24. Linda Hoffman also sold merchandise, at wholesale, to at least one store, Smiths' Town Shop, in Fort Walton Beach, Florida. Mr. H. Gene Smith, the proprietor of Smiths' Town Shop, testified that he purchased $1,026.50 in counterfeit Vuitton merchandise from Linda Hoffman. He produced checks and receipts, which were introduced into evidence, substantiating those purchases. The court, therefore, finds that Linda Hoffman generated a profit of at least $513.25 (one-half the sales price) from the sales of counterfeit Vuitton merchandise to Smiths' Town Shop in addition to the $2,550.00 in profit from sales at flea markets.

25. Accordingly, the court finds that defendants' wholesale and retail profits from the sale of counterfeit Vuitton merchandise totalled at least $3,063.25. In view of Ms. Hoffman's admitting to continuing sales of this merchandise over a 17 month period, the court does not accept her pretrial testimony that sales reaped profits of between $1,000 and $2,000 (Dep. Transcript at 118), from the sale of the merchandise.

26. Linda Hoffman knew that her merchandise was copies of authentic Vuitton merchandise. In connection with her dealings in counterfeit Vuitton merchandise, Linda Hoffman obtained a brochure, with pictures depicting "Vuitton" merchandise which were identical to Ms. Hoffman's wares, entitled "Designer Look–A–Like Handbags." She also admitted to observing authentic Vuitton merchandise at a Saks Fifth Avenue store, and that she was aware of the prices charged for authentic Vuitton merchandise. The circumstances

surrounding her dealings, including the low prices which she paid for her merchandise, are further proof of her knowledge.

27. Ms. Hoffman knowingly and intentionally sold her counterfeit Vuitton merchandise.

28. Plaintiff has incurred attorneys' fees and investigatory fees in the sum of $15,804.50 in connection with this action.

## CONCLUSIONS OF LAW

I. Defendants have offered for sale and sold merchandise bearing counterfeits of Vuitton's Registered Trade-Mark 297,594.

A. The offer for sale and sale of counterfeit Vuitton merchandise by defendants constitutes trademark infringement in violation of 15 U.S.C. § 1114. *E.g., Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1009 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

B. The offer for sale and sale of counterfeit Vuitton merchandise by defendants constitutes a false designation of the source of origin of this merchandise in violation of 15 U.S.C. § 1125. *E.g., Boston Professional Hockey Association,* 510 F.2d at 1004.

C. Defendants' offer for sale and sale of counterfeit Vuitton merchandise constitutes unfair competition in that defendants' activities injure plaintiff's public image and reputation and dilute the distinctive quality of the registered trademark and all rights held thereunder. *E.g., Boston Professional Hockey Association,* 510 F.2d at 1010.

II. Since defendants knew that they were selling Vuitton "copies" or "look-a-like" merchandise, the court finds, as a matter of law, that defendants have knowingly and intentionally offered for sale and sold their counterfeit Vuitton merchandise. *See, U.S. v. Torkington,* 812 F.2d 1347 (11th Cir.1987) (criminal indictment for counterfeiting sustained even though defendants' customers purportedly knew they were buying counterfeit merchandise); *U.S. v. Gantos,* 817 F.2d 41 (8th Cir.1987); *U.S. v. Baker,* 807 F.2d 427 (5th Cir.1986).

III. As a result of defendants' knowing and intentional violation of 15 U.S.C. §§ 1114 and 1125, and their unfair competition, plaintiffs are entitled to a permanent injunction which, *inter alia,* restrains defendants from manufacturing, distributing, offering for sale, selling or otherwise trafficking in counterfeit Vuitton merchandise. 15 U.S.C. § 1116.

IV. The Lanham Act, 15 U.S.C. § 1051, *et seq.,* also expressly affords a trademark owner the right to recover statutory damages predicated upon a counterfeiter's infringing sales:

"When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The Court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."

15 U.S.C. § 1117(a).

A. Defendants have failed to produce any credible evidence to refute plaintiff's evidence of defendants' profits from the sale of counterfeit Vuitton merchandise. If any such definitive evidence exists, it is within the defendants' sole control. As the Second Circuit held in *Deering, Milliken & Co. v. Gilbert,* 269 F.2d 191 (2d Cir.1959), a defendant who "fail[s] and refuse[s] to produce the most satisfactory evidence of his sales—or absence of sales—leaves his cause exposed to indirect and less definite and certain methods of proof." *Id.,* at 193. In *Deering,* the court extrapolated from the available evidence to determine a fair and realistic damage award. *Id.* In *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966,

973 (2d Cir.1985), the Court, quoting *Deering,* observed:

> "where ... the defendant controls the most satisfactory evidence of sales the plaintiff need only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement."

B. The differential between the counterfeit Vuitton merchandise observed by plaintiff's consultant on September 10, 1986, and October 22, 1986, and the price which he paid for the article which he purchased, represents such a reasoned basis for the calculation of defendants' sales of counterfeit Vuitton merchandise, together with evidence of specific sales to Smiths.

C. The Court, therefore, concludes that defendants sold at least 129 articles of counterfeit Vuitton merchandise for an aggregate profit of $3,063.25 during the seventeen months prior to October 22, 1986.

█ V. As amended by the Trademark Counterfeiting Act of 1984 (H.J.Res. 648), the Lanham Act effectively requires that the injured trademark owner be awarded treble damages and reasonable attorneys' fees:

> "In assessing damages under subsection (a), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee...."

15 U.S.C. § 1117(b).

As the Joint Statement on Trademark Counterfeiting Legislation observed:

> "The Senate bill called for an automatic award of treble damages and attorney's fees to plaintiffs upon a showing that defendant had 'intentionally trafficked in goods or services' knowing them to be counterfeit. The House provision spoke in terms of 'use' of a mark or designation, and gave the court discretion to reduce the award against the defendant in the event of 'extenuating circumstances.' (In this statement, the phrase 'treble damages' is used as shorthand for 'treble damages or profits.' See 15 U.S.C. § 1117).

> "The Senate sponsors have agreed to the House language concerning 'extenuating circumstances,' on the understanding that it will be a rare case in which a defendant who has trafficked in goods or services using a mark that he or she knows to be counterfeit can show that he or she should not be assessed treble damages. Once the other requirements for an award of treble damages or profits under section 1117(b) are met (that is, intentional use knowing that the mark is counterfeit), it is very unlikely that there will be any 'extenuating circumstances' that will warrant lessening the amount of the reward." 130 Cong.Rec. H12083 (October 10, 1984).

A. Defendants have failed to appear at trial and have failed to make any showing of "extenuating circumstances." 15 U.S.C. § 1117(b).

B. Plaintiffs are therefore entitled to judgment awarding treble damages and reasonable attorneys' and investigatory fees pursuant to 15 U.S.C. § 1117(b).[1] *See City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (attorneys fee award pursuant to statute may exceed damages otherwise recovered).

C. Based upon the deposition testimony of defendant Linda Hoffman, the trial testimony of plaintiff's consultant Melvin Weinberg, the trial testimony of H. Gene Smith, and the exhibits introduced in evidence, plaintiff Vuitton is entitled to the entry of judgment awarding treble damages against defendants, jointly and severally, in the sum of $9,189.75, together with prejudgment interest. *See* 15 U.S.C. § 1117.

D. Plaintiff is further entitled to recover (a) reasonable attorneys' fees and inves-

---

1. The Joint Statement on Trademark Counterfeiting Legislation expressly provides that "[t]o the extent that an investigator acts under the direction of an attorney, however, his or her fees may be recovered by a prevailing plaintiff as part of an award of attorneys fees." 130 Cong.Rec. H12083 (October 10, 1984). Mr. Winberg's fees were incurred in conjunction with the investigation of defendants' sales under the direction of plaintiff's counsel.

tigatory fees in the amount of $15,804.50 and (b) to recover its court costs.

## FINAL JUDGMENT ORDER AND PERMANENT INJUNCTION

This court, having considered the complaint for permanent injunctive relief and damages filed by plaintiff Louis Vuitton S.A. ("Vuitton") on October 22, 1986, the evidence and arguments presented at the trial of this matter of September 9, 1987, and having determined that it has jurisdiction over this matter based upon 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, and 1338, and the principles of pendent jurisdiction, determines as follows:

1. Defendants AFTER DARK BOUTIQUE AND LINDA HOFFMAN and their agents, servants, employees, successors and assigns, and all those in active concert or participation with them, be, and they are, PERMANENTLY ENJOINED and RESTRAINED from:

(a) imitating, copying or making unauthorized use of Vuitton's Registered Trade–Mark 297,594;

(b) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of Vuitton's Registered Trade–Mark 297,594;

(c) using any simulation, reproduction, counterfeit, copy or colorable imitation of Vuitton's Registered Trade–Mark 297,594 in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product, in such fashion as to relate or connect, or tend to relate or connect, such product in any way to Vuitton, or to any goods sold, manufactured, sponsored or approved by, or connected with Vuitton;

(d) making any statement or representation whatsoever, or using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead the trade or public, or individual members thereof, to believe that any product manufactured, distributed or sold by defendants is in any manner associated or connected with Vuitton, or is sold, manufactured, licensed, sponsored, approved or authorized by Vuitton;

(e) engaging in any other activity constituting unfair competition with Vuitton, or constituting an infringement of any of Vuitton's trademarks, or of Vuitton's rights in, or to use or to exploit, said trademark, or constituting any dilution of the Vuitton name, reputation or goodwill; and

(f) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

2. Defendants After Dark Boutique and Linda Hoffman shall deliver to plaintiff Vuitton any and all products, labels, signs, prints, packages, dies, wrappers, receptacles and advertisements in defendants' possession or under their control, bearing Vuitton's trademark or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same.

3. Plaintiff Vuitton is awarded, and defendants After Dark Boutique and Linda Hoffman are jointly and severally liable for damages in the total amount of $9,189.75, representing three times the sum of $3,063.25, which has been established and determined by this court to be the minimum amount of wrongful profits realized by defendants as a result of the sale of counterfeit Vuitton merchandise.

4. Plaintiff Vuitton is further awarded pre-judgment interest on the damages specified in the preceding paragraph.

5. Plaintiff Vuitton is hereby awarded reasonable attorneys' fees plus reasonable investigator's fees in the amount of $15,-804.50.

6. Plaintiff Vuitton is entitled to recover its costs of this action as may be taxed by the Clerk of the Court.