GUCCI AMERICA, INC., Plaintiff,

v.

REBECCA GOLD ENTERPRISES, INC.,
Rebecca Yahoudai, and Hertsel
Yahoudai, Defendants.

No. 89 Civ. 4736 (BN).

United States District Court,
S.D. New York.

July 15, 1992.

178

Lieberman, Rudolph & Nowak (Milton Springut and Henry Pitman, of counsel), New York City, for plaintiff.

Frank & Aronow, P.C. (Theodore M. Wachtel, of counsel), New York City, for defendants.

## OPINION AND ORDER

NEWMAN: Senior Judge of the Court of International Trade, sitting as a District Court Judge by designation.

## INTRODUCTION

Defendants Rebecca Gold Enterprises, Inc. ("Gold Enterprises"), Rebecca Yahou- dai and Hertsel Yahoudai interpose objections pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C) seeking modification of Magistrate Judge Kathleen A. Roberts' report and recommendation for awarding damages, including accumulated profits, attorney's fees and costs, and permanent injunctive relief in favor of plaintiff Gucci America, Inc. ("Gucci").[1] The recommended imposition of a permanent injunction is not opposed herein by defendants.

After independently reviewing the record and conducting a *de novo* determination regarding the issues in controversy, the recommended Findings and Conclusions expressed in Magistrate Judge Roberts' able report are hereby affirmed.

## BACKGROUND

Gucci initiated this action, grounded on infringement of a registered trademark, use in commerce of false designations of origin and false descriptions and representations, in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), respectively, and common law unfair competition, against defendants for manufacturing and distributing, *inter alia*, certain gold jewelry rings bearing a counterfeit of Gucci's interlocking "GG" logo as that trademark appears on Gucci merchandise.

Defendants' liability was previously established as per a "Stipulation and Order Re Judgment of Liability" signed by District Judge Kenneth Conboy on May 22, 1990. The case was then reassigned to the writer on November 13, 1990, and promptly calendared for trial on January 16, 1991. As a result, however, of then counsel for defendants' scheduling conflict with that date, coupled with the fact that this court's next available trial date was in May, on January 9, 1991 the pending issues involving damages and injunctive relief were referred to Magistrate Judge Roberts. Her report and recommendation concluded that "defendants deliberately, intentionally and

1. No. 89 Civ. 4736 (BN), slip op. (Magis.Ct.    S.D.N.Y. filed January 31, 1992).

willfully violated 15 U.S.C. §§ 1114 and 1125(a), and the common law of unfair competition, and that plaintiff is entitled to recover from defendants the sum of $36,-962.10, plus a reasonable attorney's fee, and a permanent injunction barring any further infringement by defendants." The parties submit that the calculation of a "reasonable" attorney's fee should be determined on the basis of this court's *de novo* review of said report and recommendation.

On defendants' request, the statutory time period permitted for filing objections to the Magistrate Judge's report was extended until April 29, 1992; Gucci's response, also by demand for extension of time, was received on May 26, 1992. In accordance with Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C) the following constitutes the court's *de novo* determination affirming the recommended Findings and Conclusions which defendants have alleged to be objectionable.

## FINDINGS AND CONCLUSIONS

The court refrains from unnecessary factual re-exposition, adopting instead Magistrate Judge Roberts' thoroughly competent presentation of the material facts. Defendants' evidentiary and substantive objections to the foregoing report, specified below, are addressed *seriatim*.

To wit, defendants contend that: (1) the admission into evidence of plaintiff counsel's redacted and un-redacted legal bills from Gucci's action against approximately twenty retailers, tried in the Eastern District of Pennsylvania as *Gucci v. Goldfinger II* (the "Philadelphia action"), offered in support of plaintiff's instant claims for damages was erroneous, subject to preclusion and court sanction under Fed.R.Civ.P. 37, and was also impermissible hearsay under Fed.R.Evid. 801 and 802; (2) the admission into evidence of the subject gold rings bearing the infringing "GG" logo lacked the prerequisite authentication required according to Fed.R.Evid. 901; (3) the Magistrate Judge abused her discretion in finding that defendants committed deliberate, willful and intentional trademark infringe-

ment; (4) the Magistrate Judge erred in awarding Gucci defendants' profits and in calculating those profits; (5) the Magistrate Judge erred by awarding Gucci its costs and attorney's fees incurred from the Philadelphia action; (6) the Magistrate Judge erred in awarding Gucci its "reasonable" attorney's fees incurred in the present litigation; and (7) the Magistrate Judge erred by failing to award defendants their costs in conformance with Fed.R.Civ.P. 68.

*Evidentiary Objections*

1.  *Redacted and Unredacted Legal Bills*

    ■ As the Magistrate Judge's report correctly points up, defendants failed to object to Gucci's production of redacted legal bills (pltf's exh. 29) in compliance with defendants' discovery requests until February 22, 1991, date of the Inquest. In response, Gucci contemporaneously supplied an unredacted version (pltf's exh. 29–A). When the Inquest resumed on March 18, 1991, these unredacted bills had been in defendants' possession for approximately one month.

    Fundamentally, Gucci's legal bills were relevant towards demonstrating the nature and extent of damages sustained in prosecuting the effects of defendants' trademark infringement. Moreover, Gucci's introduction of the evidence on February 22 provided ample time for defendants to review the information and prepare for cross-examination of the authenticating witness, thereby extinguishing any inference of prejudice to defendants.

    Defendants argue, however, for an order of preclusion, presumably under Rule 37(b), to prevent Gucci from offering exhibits 29 and 29–A into evidence. Defendants' theory is rejected as procedurally defective.

    ■ Where a party entirely fails to respond to a discovery request, Rule 37(d) enunciates that preclusion or any other sanctions permitted under Rule 37(b) may be imposed without a prior court order directing the making of discovery. 4A J. Moore, J. Lucas & D. Epstein, *Moore's Federal Practice* § 37.05 at 37–119—37–

121 (2d ed. 1992); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2291 at 807 (1970). Conversely, where a party, as in the instant matter, *responds* to a discovery request and the actual controversy entails the adequacy of that response, Rule 37(b)'s various remedies, including sanctions, are available only after a party's failure to comply with an order compelling discovery. *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir.1986); *cf. Israel Aircraft Indus., Inc. v. Standard Precision*, 559 F.2d 203, 208 (2d. Cir.1977) (dismissal under this subdivision [is] improper in the absence of an order).

Hence, as there was never a court order directing the production of unredacted legal bills, defendants' objection on this ground must be denied.

■ Similarly, defendant's hearsay objection is without merit. The application of the business records exception, Fed.R.Evid. 803(6), to the rules prohibiting hearsay is not limited to documents actually prepared by an authenticating witness. Indeed, Rule 803(6) "favor[s] the admission of evidence rather than its exclusion if it has any probative value at all." *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2nd Cir.1981) (*quoting United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir.1977)). In essence, the trustworthiness dilemma pertaining to the admission of business records is satisfied when the declarant testifies that the documents have been properly integrated into company records during the ordinary course of business and are relied upon in day to day operations. *Id.* at 46 (citations omitted).

■ Here, the unredacted legal bills were properly authenticated as business records by virtue of Inquest testimony from Robert Tucker, Esq., an attorney for plaintiff's law firm of Blum, Gersen, Dollard & Stream, responsible for commencing and overseeing litigation on Gucci's behalf in the Philadelphia action. Since the uncontradicted evidence shows that Tucker prepared a draft of the legal bills for Gucci during the course of investigating and litigating the Philadelphia action, and after compiling the time slips submitted by the attorneys actually undertaking the services in question, there was no hearsay error in the Magistrate Judge's receipt of exhibits 29 and 29–A.

### 2. Gold Rings with Interlocking "GG" Logo

■ Gucci offered exhibits 6–11 and 13–14 as samples of the rings made by defendants bearing the counterfeit "GG" logo. Defendants suggest that Gucci's foundation for introducing these samples into evidence is lacking for failure of proper authentication, essentially because Gucci's witnesses could not state with absolute certainty that the samples were in fact the same rings manufactured by defendants and sold to its retail conduits in Philadelphia.

Importantly, the language of Fed.R.Evid. 901(a) reveals that the standard by which evidentiary authenticity is measured is not "absolute certainty," but instead "evidence sufficient to support a finding that the matter in question is what its proponent claims."

After carefully reviewing and crediting unrebutted testimony from deposed retail merchants who specifically identified the said exhibits as the same rings purchased directly from the defendants, and hearing the testimony from Gucci's private investigator, Cheryl Holmes, who, along with Tucker, were the principal coordinators behind the seizure of infringing gold rings from these retail locations, Magistrate Judge Roberts ruled that the prerequisite requirement of authenticity concerning these counterfeit ring samples had been attested to by the proponents of Gucci's position. Without doubt, Magistrate Judge Roberts' decision was principally based on the foregoing highly damaging testimony. The court is not persuaded to overrule this evidentiary ruling.

### Substantive Objections

### 3. Magistrate Judge Roberts' Finding of Willful, Deliberate and Intentional Infringement

■ Defendants next object to Magistrate Judge Roberts' finding of deliberate,

willful and intentional infringement as an "abuse of discretion" citing the following as proof that defendants never had infringing intent: (1) defendants did not "focus" on the interlocking "GG" design, and instead merely gave the sample to their workers for fabrication; (2) due to defendants' foreign origin, they were unfamiliar with the Gucci trademark; (3) defendants were "not concerned" with the "GG" logo *per se* as their jewelry was sold by weight; (4) defendants' inability to recall the respective identities of any individuals who requested manufacture, and any purchasers along the distribution chain was justified given the high volume and informal nature of defendants' jewelry business; (5) defendants purportedly marked their rings with the identifying mark "REBE" to identify the merchandise as their own product; and (6) defendants' customers were aware that they were purchasing from defendants and not from Gucci.

Unfortunately for defendants it is precisely this calculated activity and inexplicably vague recognizance which was responsible for Magistrate Judge Roberts' well-reasoned conclusion that defendants acted intentionally and willfully in counterfeiting Gucci's trademark.

At the outset, the court views the issue concerning the finding of intentional infringement purely as a material question of fact. As such, the tribunal most closely associated with the actual input of factual data was best situated to evaluate and accord relative weight to the multiplicity of relevant factual elements presented. Indeed, "the reviewing court oversteps the bound of its duty under Rule 52(a) [Fed. R.Civ.P.] if it undertakes to duplicate the role of the lower court. 'In applying the **clearly erroneous** standard to the findings of the district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide **factual** issues *de novo* [emphasis supplied].'" *Anderson v. City of Bessemer*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (*quoting Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)). Furthermore, "when findings

are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* at 575, 105 S.Ct. at 1512.

Hence, as the fact finder with the primary ability to observe the demeanor and tone of testifying witnesses, Magistrate Judge Roberts' findings in this regard will be upheld unless "clearly erroneous." Under the circumstances, then, in recommending disposition of this matter, since the Magistrate Judge's determinations were expressly framed on her personal assessment of "the defendants [lack of] credibility ... based upon all of the testimony offered at the Inquest and [her] observation of the defendants' demeanor on the stand," in the absence of highly compelling evidence from the defendants contradicting these findings they must not be disturbed.

### 4. *Magistrate Roberts' Award and Calculation of Defendants' Profits*

For purposes of recompense to Gucci subsequent to Magistrate Judge Roberts' finding of "deliberate, willful and intentional" infringement, the Magistrate Judge awarded Gucci defendants' profits from the sale of the counterfeit rings in the amount of $6,735.00.

*Award of Defendants' Profits*

■ Defendants objection to the award itself may be resolved in relatively short shrift. Since Magistrate Judge Roberts properly found that defendants' infringement was deliberate and willful, the award of defendants' profits is mandated by statute. Section 35 of the Lanham Act, 15 U.S.C. § 1117, applies to causes of action for unfair competition under section 43(a), 15 U.S.C. § 1125(a), as well as for infringement of registered trademarks under section 32, 15 U.S.C. § 1114(1)(a). *See Centaur Communications, Ltd. v. A/S/M Communications Inc.*, 830 F.2d 1217, 1229 (2nd Cir.1987).

As fully transcribed in the Magistrate Judge's report, this section contains the remedial framework in cases of trademark infringement and unfair competition. In pertinent part, the statute entitled "Recovery for Violation of rights" provides:

(a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established, in any civil action arising under this chapter, the plaintiff *shall* be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court *shall* assess such profits and damages or cause the same to be assessed under its direction. *In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of costs or deduction claimed.* ... The court in exceptional cases may award reasonable attorney fees to the prevailing party [emphasis supplied].

(b) Treble damages for use of counterfeit mark

*In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee,* in the case of any violation of section 1114(1)(A) [sic] of this title ... that consists of *intentionally* using a mark or designation, knowing such mark is a counterfeit mark ... in connection with the sale, offering for sale, or distribution of goods or services [emphasis supplied].

In this Circuit, sound precedent firmly supports Magistrate Judge Roberts' strict compliance with the trademark laws. Notably, these rules serve the dual function of meaningfully accommodating enforcement of the businessman's development of customer goodwill and product reputation, and of safeguarding the consumer against "spurious and falsely marked goods." *See*

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir. 1986); *Vuitton Et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1075 (S.D.N.Y.1979) *aff'd,* 622 F.2d 577 (2d Cir. 1980).

### Calculation of Defendants' Profits

■ The profits wrongfully acquired by defendants may be taken as one measure of Gucci's actual damages. *Deering Milliken & Co. v. Gilbert,* 269 F.2d 191, 195 (2d Cir.1959). Gucci need not demonstrate any actual damages in order to obtain an accounting for profits. *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966, 973 (2d Cir.1985). As emphasized *supra,* section 35(a) directs that the plaintiff need only prove defendant's sales. In stark contrast, the defendant must prove all elements of costs or deductions claimed.

In the case at bar, the dearth of any documentation reflecting defendants' costs, however, substantially complicated the Magistrate Judge's task of quantifying defendants' gains from sales of counterfeit items. As defendants maintained no records of either sales or costs it is evident that the only useful evidence concerning defendants' profits necessarily involved a certain degree of speculation and approximation from Gucci's witnesses pertaining to defendants' sales. In fact, when queried respecting the extent of their counterfeiting activities, defendants deliberately minimized their figures, inescapably compelling the fact finder to rely on a less certain method of approximation in order to determine the volume of defendants' sales.

Plainly, when faced with such a dilemma a court may justifiably rely on circumstantial evidence involving the extent of an infringer's wrongdoing. *Cf. Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931) ( [I]t will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would

be possible if the case, which he alone is responsible for making, were otherwise.); *Louis Vuitton S.A.*, 765 F.2d at 973. *See also Deering Milliken & Co.*, 269 F.2d at 193 (where ... the defendant controls the most satisfactory evidence of sales the plaintiff need only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement.)

Thus, although defendants now erroneously criticize Magistrate Judge Roberts' reasoning, her process of approximating the number of rings sold (25 large and 59 small), their sales price ($116 for the large ring and $65 for the small ring), was uniformly founded on a just and reasonable reliance of the sole credible evidence.

In sum, applying the foregoing principles to this case and considering the totality of the evidence in Gucci's favor the court concludes that the award and calculation of defendants' profits in the amount of $6,735 was correct. In this regard, with due deference towards Magistrate Judge Roberts' careful factual analysis, the court also confirms her assessment that "the limited extent of the infringement in this case constitutes an extenuating circumstance that militates against trebling of damages or profits."

### 5. The Award of Gucci's Attorney Fees and Costs from the Philadelphia Action

■ The overwhelming portions of Gucci's damages were composed of attorney fees and costs incurred in the Philadelphia action amounting to $30,227.10. This figure was based upon Magistrate Judge Roberts' finding that the legal bills paid by Gucci in the Philadelphia action (pltf's exh. 29 and 29–A), were reasonable, and upon the Magistrate Judge's finding that these bills were incurred as a result of defendants' willfully unlawful activity.

Significantly, the Magistrate Judge reduced this award to represent 75% of actual fees and expenses incurred "in light of the evidence that some of merchandise seen by [Cheryl] Holmes and seized in *Goldfinger* [the Philadelphia action] cannot be attributed to Rebecca Gold."

Defendants' opposition to the Magistrate Judge's award of legal fees and costs to Gucci is grounded on purportedly insufficient evidence of intent. But defendants' said objection directly conflicts with the court's prior affirmance of Magistrate Judge Roberts' correct finding of deliberate and intentional infringement. Moreover, to the extent that defendants claim that the award of legal fees constitutes an award of the total costs of Gucci's trademark enforcement program, their argument is plainly contradicted by Magistrate Judge Roberts' recommended 25% reduction for the reasons quoted above.

Accordingly, since the Magistrate Judge thoughtfully tailored the amount of awarded attorney's fees and costs in calculating damages, to ensure that defendants paid only for that portion of the Philadelphia action that was clearly attributable to their illegal activity, there was no error in awarding as damages that specified percentage (75%) of Gucci's legal fees and costs from the Philadelphia action amounting to $30,227.10.

### 6 & 7. Gucci's Reasonable Attorney Fees and Award of Costs Incurred at Bar

#### Gucci's Attorney's Fees

■ The Magistrate Judge also recommended granting reasonable attorney's fees incurred by Gucci in the present action. At this juncture, the previously quoted remedial principle bears repetition: In conformance with section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b), since the defendants' counterfeiting was found to be deliberate the Magistrate Judge's award of reasonable attorney's fees was mandatory. Indeed, where a defendant's infringement is intentional "federal courts are expected, and not merely authorized to 'enter judgment for three times such profits or damages, whichever is greater, together with reasonable attorney's fees'" *Fendi S.A.S Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F.Supp. 1143, 1147 (S.D.N.Y.1986).

By agreement of the parties, the determination of the exact amount is to be predicated on this court's ruling on the objections contemplated herein. In such connection, the court orders that within twenty (20) days of the entry of this Opinion, the plaintiff shall file in this court and serve defendants with an application calculating proposed reasonable attorney's fees with supporting documentation. Defendants may respond to plaintiff's proposed calculation within twenty (20) days after service of the application; plaintiff may thereafter file and serve a reply within five (5) days after service of defendants' response.

*Defendants' Costs*

Finally, the court turns to address defendants' demand for costs incurred in the instant action, pursuant to Fed.R.Civ.P. 68. During the pendency of this action defendants made an offer of judgment to Gucci for $4,000. Premised on the theory that the Magistrate Judge's decision was flawed and that the court should rule in defendants' favor, defendants contend that Rule 68 entitles defendants to an award of costs[2].

The court holds that the defendants' contention is erroneous. After careful review and consideration of the arguments presented by respective counsel and according to each appropriate relative weight, and further in view of the court's affirmance of Magistrate Judge Roberts' recommended Findings and Conclusions, defendants' application is hereby denied.

## CONCLUSION

Magistrate Judge Roberts' report and recommendation is hereby affirmed in all respects.

---

**2.** Fed.R.Civ.P. 68 provides, in relevant part: If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.